Gibson, J.
I concur generally in the dissenting opinion of Taft, C. J.; however, on the basis of study and my experience as a former member of the Public Utilities Commission, I feel compelled to make a few additional comments respecting today’s action by this court.
Apparently in the search for a method of making the complexities of the rate-making process understandable, the majority of this court has enshrined as an absolute verity the rates of return allowed by the Public Utilities Commission in these cases. This action overlooks the realities of rate making. First, as a matter of mathematics the percentage figure representing the rate of return is merely a means of showing the relationship between the reproduction, cost new less depreciation value of utility property and the dollar return realized or to be realized thereon. Second, the majority seems to assume that the percentage figure representing the allowable rates of return in these cases, which may well have been reasonable under the law as it existed at the time of the commission’s order, must continue to be reasonable after the change in law which occurs today.
Those familiar with rate making understand and, except for some special pleaders, frankly admit that agencies, such as the Public Utilities Commission, engaged in so-called rate making are primarily engaged in the regulation of earnings. There can be no question that when a public utility files an application *602 for a rate increase with the commission, whether by way of appeal from a municipal ordinance or as an original matter, it is primarily interested in being allowed to increase its earnings. When the commission grants a so-called rate increase it in fact authorizes the utility to adjust its rates so as to increase its earnings. Of necessity in the vast majority of cases, any increase in earnings allowed generally calls for an increase of some kind in the rates charged by the utility to its customers. In practice, through the years, once it has been determined that the utility should have an increase in earnings in a certain amount, the commission, partly because of lack of interest and partly because of lack of personnel, has accepted any rate schedule filed by the utility as long as it yields approximately the same number of dollars authorized to it as increased earnings. Regardless of how it may be stated the practical question to be determined by the commission is: How many dollars should the utility reasonably be permitted to earn on its investment?
Experience has shown that there is no single or simple formula for determining the number of dollars a public utility reasonably should be permitted to earn on its investment. By statute and the decisions of this court it is well established that the effect of inflation is considered because the reasonableness of the earnings is to be based on the reproduction cost new less depreciation value of the utility property. In determining reasonable earnings or a fair rate of return, the commission also considers such factors as the rate of return on book capital, the rate of return on book equity, the ratio of debt to equity, comparative earnings of various portions of the utility, earnings of the utility involved as compared with earnings of other utilities, taxes which must be paid because of the increased earnings, the effect of the allowed increase in earnings upon rates to be paid by customers of the utility involved and as compared to rates paid by customers of like utilities, the applicable statutes, the rulings of this court, and many other factors. In the end, the increase in earnings and rate of return allowed is a judgment figure established by the Public Utilities Commission in the exercise of its administrative expertise.
The relationship and the importance of interest and taxes *603 upon the earnings and rate of return of the public utility, which has been discussed ably and in detail by Taft, C. J., in. his dissenting opinion in these cases, are glossed over by the majority of this court in their desire to reject the so-called “hypothetical company” concept evolved in City of Cleveland v. Public Utilities Commission (1956), 164 Ohio St., 442; Ohio Fuel Gas Co. [Findlay] v. Public Utilities Comminssion (1960), 171 Ohio St., 10; Cincinnati Gas & Electric Co. v. Public Utilities Commission (1962), 173 Ohio St., 473; and Ohio Edison Co. v. Public Utilities Commission (1962), 173 Ohio St., 478. The majority of this court seems surprised to find that the effective rate of return in case No. 37276 is 5.26 per cent based on the statutory rate base instead of 5.75 per cent, and in case No. 37277 is 5.03 per cent rather than 5.75 per cent and in ease No. 37473 is 5.53 per cent rather than 6 per cent. Although the court may be surprised, the commission, the public utilities and the municipalities of the state have been well aware through the years that taxes in fact decrease the rate of return stated in orders of the commission. In fact, rate orders issued by the commission since this court’s decisions in the Cincinnati Gas $ Electric Company case and in the Ohio Edison Company case now plainly state that the effective rate of return on the statutory rate base is less than the rate of return allowable before consideration of the tax. advantage which the utility enjoys.
Had I been a member of this court at the time of the decision in the Findlay case, I might well have agreed with Weygandt, C. J., and Thomas J. Herbert, J., to let the Public Utilities Commission continue to compute the interest in the so-called “debt component” on the basis of the interest actually paid by such utility. However, after the passage of years and the experience the commission, the utilities, and the municipalities of this state have had with the hypothetical concept, in my opinion, this court would better serve the public by requiring the interested parties to continue to process rate cases in accordance with well established rules rather than to engage in the disruptive oversimplification which it invokes today.
The purpose of judicial review, particularly of administrative action, is not to create rules simple enough in every case that each and every member of the court may thoroughly under *604 stand every feature of the regulatory function, but is only to ascertain that the actions of the agency are not unreasonable or unlawful. In these cases the Public Utilities Commission finds itself in the anamolous position of having complied with the law laid down by this court but nonetheless having acted arbitrarily and unlawfully. In my opinion, this court would serve the public interest better by not disturbing the established mode of regulating public utility earnings, or rate making, as it is more commonly called.